## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Hirschman

v.

Brown

### March 23, 1988

### By JUDGE WILLIAM H. LEDBETTER, JR.

This specific performance suit arises out of a dispute over a time-of-performance clause in a real estate sales contract.

The parties entered into a real estate contract dated April 3, 1986, by the terms of which the defendants (the Browns) agreed to sell their former marital residence to the complainants (the Hirschmans) for $46,500.00.

On the Monday after the contract had been signed, Mr. Hirschman applied for financing. On the same day, April 7th, he ordered an appraisal (one of the loan requirements) and paid the appraisal fee. Over the next several weeks, he retained a lawyer, delivered various loan papers to the lender's Fredericksburg office, arranged for a termite inspection, and paid the electric bill so that the water supply could be tested (another loan requirement).

The Hirschmans' loan was approved on July 8th, and they were notified of the approval on July 11th.

Meantime, on July 3rd, Mr. Brown posted a letter to the Hirschmans informing them that "a reasonable amount of time having passed without a settlement date . . . the . . . contract is null and void." Mr. Brown has steadfastly refused to convey the property and accept the purchase price.

Mrs. Brown, who is divorced from Mr. Brown, has been willing to perform under the contract, and in her pleadings, she asks the court to compel Mr. Brown to do likewise.

The Hirschmans filed a bill for specific performance on October 15, 1986. Mr. Brown filed a responsive pleading *pro se* denying that he had breached the contract and contending that the Hirschmans breached the contract by their failure to go to settlement prior to his July 3rd termination letter. (Later, Mr. Jarrell became counsel of record for Mr. Brown.) Mrs. Brown filed a responsive pleading and a cross-bill against Mr. Brown, joining the Hirschmans' request for relief.

The cause was referred to a commissioner in chancery on March 16, 1987. The commissioner conducted hearings on July 28, 1987, September 23, 1987, and December 9, 1987, and submitted his report on February 17, 1988. Mr. Brown filed exceptions to the report, and counsel scheduled a hearing on the exceptions for March 21, 1988. Prior to the hearing, counsel notified the court that they had agreed to submit the case to the court on the record without ore tenus arguments.

Ordinarily, time is not of the essence in contracts for the sale of land. Settled contract law implies a reasonable time limitation for performance of conditions in such contracts. 4B M.J., *Contracts* § 59. In equity, time is not regarded as of the essence of a contract unless it affirmatively appears that the parties regarded time as an essential element of their bargain. *Morris v. Harrop*, 154 Va. 127 (1930).

It is equally well settled that the parties can make time of the essence by the express terms of their agreement. If the question is in doubt, the same rules are applied that govern the construction of contract language on other points.

In this case, the contract contains time-of-performance language. The controversial clause is paragraph 5:

5. Purchaser and Seller agree to make full and final settlement of this Contract of Sale on or before 30 May 1986, except that a reasonable time beyond such date shall be allowed for arranging the aforementioned deed of trust financing

and for correcting any reported title defects. TIME SHALL BE OF THE ESSENCE.

The commissioner concluded that no ambiguity exists which would permit the consideration of parol evidence as to the meaning of paragraph 5. Using the rule of construction explained in *Ames v. American National Bank*, 163 Va. 1 (1934), and *Hutchinson v. King*, 206 Va. 619 (1965), that seemingly conflicting provisions of a contract shall be harmonized where reasonably possible, the commissioner found that the provisions of paragraph 5 can be reconciled. Settlement shall occur on May 30, 1986, and such time is expressly essential, subject to two specific exceptions: (1) where additional reasonable time is needed to arrange financing for the purchasers, and (2) where additional reasonable time is needed to correct a title defect for the sellers.

> Simply stated, to every rule, contracting parties can make an exception; in this case, to the rule that "time is of the essence," the parties carved out two specific exceptions, one of which pertains to financing. Commissioner's Report, p. 6.

The court is of the opinion that the commissioner has correctly construed the plain and unambiguous time-of-performance language in the contract, and he has properly concluded that the Hirschmans' bona fide efforts to obtain third-party financing permitted a reasonable extension of the May 30th "deadline."

Even if the contested language of paragraph 5 were not plain, so that its meaning is in doubt, Mr. Brown has failed to provide persuasive extrinsic evidence of the parties' intent to treat the date of May 30, 1986, as essential to this transaction.

First, Mr. Brown says that he discussed the meaning of the clause with Mr. Hirschman and got assurances that it protected him against delays of settlement beyond May 30th. Mr. Hirschman and Philip G. Kornberg, the Browns' listing agent, who was present at the meeting, denied that such statements were made.

Second, Mr. Brown contends that the circumstances of the sale, known to the Hirschmans, made time of the essence. He points out that he was behind in his mortgage payments and that he faced foreclosure unless the property was sold and the lien satisfied immediately. The Hirschmans deny that there was any imminent danger of a foreclosure. Mr. Brown presented no demand letters, foreclosure notices, or other evidence of impending legal action by his mortgagee. Although his arrearage may have been a motivating factor, it was not a key element. Instead, the Browns' motivation was the provision in their final decree of divorce, entered on September 16, 1985, requiring that the property be sold and the proceeds divided between them. Mrs. Brown had not lived there since 1982. Mr. Brown was residing, at least for the most part, with a girlfriend and, in fact, terminated the electric service and telephone service to the property shortly after he executed this contract.

Other evidence belies Mr. Brown's claim.

The listing agent, Mr. Kornberg, detailed his exasperating efforts to maintain contact with Mr. Brown during the pendency of this contract. He had to resort to leaving written messages for Mr. Brown which Mr. Brown could not remember because he was "going through a state of depression."

Mr. Brown first attempted to cancel the contract less than two weeks after he signed it. At his request, Mr. Kornberg gave him a "release of contract" form but declined to assist in obtaining the Hirschmans' signatures to it. This evidence undermines Mr. Brown's claim that he was motivated to terminate the contract in July only after waiting an unreasonable length of time for settlement.

At bottom, the testimony and documentary evidence in this case does anything but portray a harried, inquisitive seller, anxious to close a real estate transaction, hampered and impeded by the unreasonable delays of the purchasers, as Mr. Brown apparently would have the court believe.

Finally, Mr. Brown argues that even if the contract language is unambiguous and creates an exception to the May 30th "time is of the essence" provision, the Hirschmans breached the contract by failing to tender the purchase price within a reasonable time after May 30th.

The commissioner addressed this argument and concluded "that as of July 3, 1986[1] (the date when Mr. Brown attempted to declare the sales contract null and void), the reasonable time provided beyond May 30, 1986, to arrange financing had not expired."

The court agrees with the commissioner. Third-party financing was contemplated by the parties and was expressly provided in the contract. In the spring of 1986, a three-month loan approval period was well within the norm; in fact, as the evidence establishes, it constituted a comparatively short processing and approval time frame.

The commissioner's report will be confirmed, and for the reasons explained above, the contract will be specifically enforced. Mr. Nuckols will prepare and circulate a sketch decree of specific performance, making reference to this opinion. The decree should provide that the Hirschmans shall pay the purchase price to the Browns within ninety days from the date of the decree, and that the Browns shall be compelled to deliver to the Hirschmans a good and sufficient deed of conveyance, according to the terms of the contract.

The fee of the commissioner in chancery, in the amount of $735.00, is reasonable and proper.

All costs of these proceedings shall be assessed against Mr. Brown.

---

[1] In his report, the commissioner refers to July 3, 1987, as the date of Mr. Brown's termination letter. This is obviously a typographical error. The date of the letter is July 3, 1986. See Com. Ex. No. 6.